UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**<br>P.O. Box 710<br>Tucson, AZ 85702-0710<br><br>*Plaintiff,*<br><br>v.<br><br>**DEB HAALAND**, in her official capacity as Secretary of the U.S. Department of the Interior<br>1849 C Street NW<br>Washington, DC 20240<br><br>**U.S. FISH AND WILDLIFE SERVICE**<br>1849 C Street NW<br>Washington, DC 20240<br><br>**MARTHA WILLIAMS**, in her official capacity as Director of the U.S. Fish and Wildlife Service<br>1849 C Street NW<br>Washington, DC 20240<br><br>*Defendants.* | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Time and time again, the U.S. Fish and Wildlife Service ("FWS") has sought to prematurely and illegally reduce and remove protections for the gray wolf (*Canis lupus*) under the Endangered Species Act, 16 U.S.C. §§ 1531-40 ("ESA"). In doing so, the agency has consistently failed to consider what is necessary for the survival and recovery of the species as a whole in the contiguous United States. In 2017, the D.C. Circuit vacated FWS's determination that a population of wolves in the Great Lakes region no longer needed ESA protections because the agency ignored additional areas across the

1

wolf's historical range. *Humane Soc'y of the United States v. Zinke*, 865 F.3d 585, 600 (D.C. Cir. 2017) ("*Humane Society*"). In February of this year, relying on the Court of Appeals' analysis in *Humane Society*, another court vacated FWS's most recent attempt to remove federal protections from the gray wolf nearly nationwide without addressing whether the species has in fact recovered on a nationwide basis. Rather than once again rush to illegally remove wolf protections, FWS must first take steps required by the ESA to actually complete gray wolf recovery across the country.

2.   FWS has never prepared a nationwide plan to guide gray wolf recovery efforts, notwithstanding the ESA's mandate that, with rare exceptions, the FWS "shall develop and implement" recovery plans for listed species. 16 U.S.C. § 1533(f). Nor has the agency reviewed the status of the gray wolf throughout its range in the last five years, as the ESA requires. 16 U.S.C. § 1533(c)(2)(A).

3.   To ensure that FWS recovers wolves across the Lower 48, as the law requires, the Center for Biological Diversity ("the Center") brings this lawsuit under the ESA and the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* ("APA"), against defendants Deb Haaland, Secretary of the Interior; the U.S. Fish and Wildlife Service; and FWS's Director, Martha Williams (collectively, "FWS"). As detailed further below, the Court should order FWS to develop a nationwide recovery plan and conduct a five-year status review for the gray wolf.

## JURISDICTION AND VENUE

4.   This action arises under the ESA, 16 U.S.C. § 1531 *et seq.*, and the APA, 5 U.S.C. §§ 551, 701 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201-2202 (declaratory and further relief),

16 U.S.C. §§ 1540(c) and (g)(1)(C) (action arising under the ESA and citizen suit provision), and 5 U.S.C. § 702 (Administrative Procedure Act). The Center has properly given notice to FWS of its claims under the ESA in accordance with 16 U.S.C. § 1540(g)(2)(C).

5. Venue is proper in the District of Columbia pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e), as this civil action is brought against an agency of the United States and officers and employees of the United States acting in their official capacities and under the color of legal authority, a substantial part of the events giving rise to the claim occurred in the District of Columbia, and no real property is involved in this action.

## PARTIES

6. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) corporation with offices across the country, including in Tucson, Arizona; Oakland, California; Denver, Colorado; Portland, Oregon; and Washington, D.C. The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. The Center has more than 89,000 members throughout the United States and the world.

7. The Center and its members have a long-standing interest in conserving gray wolves and have routinely advocated for their conservation. For example, the Center submitted a petition for rulemaking to FWS on July 20, 2010, that formally requested development of a nationwide wolf recovery plan under the ESA, 16 U.S.C. § 1533(f), and the APA, 5 U.S.C. § 553.

8. The Center brings this action on its own institutional behalf and on behalf

of its members who live, work, recreate, study, and otherwise use and enjoy areas throughout the gray wolf's current and historical range. These members have observed wolves in the wild throughout their current range and would like to continue seeing them in this current range and throughout more of their historical range, including the Northeast, Pacific Northwest and California, Southern Rocky Mountains, and the Great Plains. The Center's members derive scientific, aesthetic, recreational, and other benefits from observing, studying, and otherwise enjoying this species in the wild. The Center and its staff members derive professional and scientific benefits from studying gray wolves, advocating for their conservation, and communicating scientific information about them to the public. Thus, the Center and its members have ongoing interests in the wolf and its recovery.

9. The interests of the Center and its members in observing, studying, and otherwise enjoying the wolf, and in obtaining and disseminating information regarding its status, are directly harmed by FWS's inaction. Specifically, FWS's failure to develop and implement a nationwide recovery plan diminishes Plaintiff's scientific, aesthetic, and recreational interests because the gray wolf is unlikely to recover fully without a nationwide recovery plan. FWS's failure to conduct a timely status review diminishes Plaintiffs' professional interest in studying the gray wolf; without a timely status review, Plaintiff cannot obtain and disseminate up-to-date information about this species. Thus, FWS's inaction decreases opportunities to view, study, enjoy, and communicate about wolves, harming the Center and its members' scientific, aesthetic, professional, and recreational interests.

10. Unless the requested relief is granted, the interests of the Center and its

members will continue to be injured by FWS's failure to develop and implement a nationwide recovery plan for the gray wolf under the ESA. These interests will also continue to be injured by FWS's failure to analyze the status of the gray wolf through a timely five-year status review. The injuries described above are actual, concrete injuries that are caused by FWS and presently suffered by the Center and its members, and they will continue to occur unless relief is granted by this Court. The relief sought herein, which includes an order that FWS develop and implement a nationwide gray wolf recovery plan and conduct a timely five-year status review, would redress the Center's and its members' injuries. The Center has no other adequate remedy at law.

11. The Center has individual members, including Noah Greenwald, Josh Able, Bryan Newman, Tom Zieber, Brett Hartl, Tim Coleman, and John Glowa, who regularly visit, study, work, photograph, live, or recreate on lands that are suitable gray wolf habitat. Each of the members has specific plans to continue to observe, study, or otherwise interact with gray wolves and their habitat frequently and on an ongoing basis. The Center's members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefits from their interactions with gray wolves and their habitat, and the harm to their interests will be remedied in part by creating a national recovery plan and completing a five-year status review for the gray wolf.

12. Center member and Endangered Species Program Director Noah Greenwald has worked for many years to protect gray wolves in North America. Mr. Greenwald has overseen litigation fighting for the protection of wolves under the ESA. Mr. Greenwald has also seen wolves in the wild and makes frequent visits to areas in the U.S. where wolves live, including Mt. Hood National Forest in his home state of Oregon,

with hopes of again viewing wolves. Mr. Greenwald regularly goes on trips, such as a recent one backpacking in the central Oregon Cascades, with the intention of seeing wolves, and plans to continue to do so in the future.

13. Center member and California resident Josh Able is a professional wildlife photographer who often photographs wolves and has seen wolves in the region where he lives. As a professional wildlife photographer, Mr. Able has also derived professional and economic value from photographing wolves. Mr. Able hopes to continue to view wolves in his home state of California and plans to create opportunities in the future to view wolves in California to photograph them and enjoy their presence. The lack of a national recovery plan for the gray wolf negatively impacts Mr. Able's ability to enjoy and photograph wolves in California and other locations in the U.S.

14. Tim Coleman is a Center member who lives in northeastern Washington, where most of the state's wolf packs live. He regularly recreates outside in search of wolves and plans to continue looking and listening for wolves and otherwise enjoying their presence in the state. Mr. Coleman is also the Director of Kettle Range Conservation Group, which does extensive work to protect and preserve the gray wolf and its habitat in the Kettle River Range Mountains of northeastern Washington. Having actively worked on wolf conservation since 1988, his interests in wolf recovery in Washington state are harmed by the lack of national recovery plan.

15. Bryan Newman is an amateur naturalist and Center member living in Minnesota. He has for many years camped and hiked in wolf habitat in Minnesota and will continue to do so while looking and listening for wolves. He has seen wolves on multiple occasions in Minnesota and has an interest in wolf recovery both in Minnesota

and in other areas that he recreates, such as the Great Plains and southern Rockies, where he has looked for wildlife and will continue to do so.

16. Center member and Government Affairs Director Brett Hartl has lived, worked, and taken numerous trips to the northern Rocky Mountains and elsewhere in wolf habitat over the last twenty years to view and photograph gray wolves in the wild. On his most recent visit to Yellowstone National Park in May 2021, he was able to watch and photograph several wolf packs in Yellowstone's Lamar Valley. Mr. Hartl also traveled to Montana and Wyoming in July 2020 to photograph wolves. Mr. Hartl plans to return to the northern Rocky Mountains in the summer of 2023 and hopes to view and photograph wolves again. Mr. Hartl also has a professional interest in seeing the survival and recovery of gray wolves in the northern Rocky Mountains and elsewhere in its historical range. FWS's failure to develop and implement a national recovery plan impairs the ability of wolves to survive and recover in these areas and therefore impairs Mr. Hartl's ability to observe, photograph, and otherwise enjoy wolves in the wild.

17. Tom Zieber is a Center member and resident of Colorado who has worked on wolf conservation for several decades. Most recently, Mr. Zieber worked on the successful push to pass Proposition 114 to reintroduce wolves in Colorado. Mr. Zieber is also an avid camper and hiker. The presence of wolves deepens his appreciation of wild places and enlivens his experience of the land, while their absence greatly diminishes his enjoyment of being in nature. Mr. Zieber's interest and appreciation for wolves is injured by FWS's failure to create a national recovery plan to adequately provide for the survival and recovery of the species, including in Colorado.

18. John Glowa is a Center member and the founder of the Maine Wolf

Coalition, which was established in 1994 to promote wolf conservation in the Northeast. Mr. Glowa has given presentations throughout the state of Maine to educate people on the importance of wolves and teach about wolf recovery in the Northeast. Mr. Glowa has also spent countless hours looking for wolf scat in the woods in Maine and sending samples to universities for analysis, with the goal of documenting wolf presence in the region. Mr. Glowa values wolves for their important ecological roles, such as control of overabundant moose and deer.

19. Defendant DEB HAALAND, Secretary of the Interior, is the highest-ranking official within the U.S. Department of the Interior and, in that capacity, bears the ultimate responsibility for the administration and implementation of the ESA for terrestrial and freshwater plant and animal species and certain marine species, and for compliance with all other federal laws applicable to the Department of the Interior. She is sued in her official capacity.

20. Defendant U.S. FISH AND WILDLIFE SERVICE is a federal agency within the Department of the Interior authorized and required by law to protect and manage natural resources. FWS has primary authority for day-to-day administration of the ESA with respect to terrestrial and freshwater plant and animal species and certain marine species.

21. Defendant MARTHA WILLIAMS is Director of the U.S. Fish and Wildlife Service. She is sued in her official capacity.

**FACTUAL ALLEGATIONS**

22. The gray wolf once occupied the majority of North America, excluding perhaps only the driest deserts and the southeastern U.S., where the red wolf occurred.

Scientists estimate that prior to European settlement, as many as 2 million wolves may have lived in North America.

23. Wolves are vitally important to the ecosystems they inhabit. Within the United States, studies of gray wolves in Yellowstone National Park and elsewhere demonstrate that wolves significantly shape their ecosystems, promoting biodiversity and overall ecological health.

24. Failing to recognize the value of wolves, government agents used deadly poisons and traps to kill wolves during the late 19th century and the first half of the 20th century. By 1967, when wolves were first federally protected under a precursor to the ESA, they had been reduced to fewer than 1,000 wolves in northeastern Minnesota, with a very small, isolated population on Isle Royale.

25. FWS originally protected wolves as four subspecies, but, given uncertain validity of these subspecific designations, FWS in 1978 protected the gray wolf in the conterminous United States as an endangered species and designated the Minnesota population as threatened. 43 Fed. Reg. 9607 (March 9, 1978).

26. Rather than develop a nationwide gray wolf recovery plan, FWS developed separate plans for three recovery areas: 1) the Northern Rocky Mountains (drafted in 1978, revised in 1987, now delisted); 2) the eastern U.S. with a focus on Minnesota (drafted in 1978, revised in 1992); and 3) the Southwest (now separately listed as the Mexican gray wolf subspecies).

27. FWS developed these recovery plans prior to major scientific gains in wolf genetics and population viability analysis. The agency never developed recovery plans to guide recovery for many areas where wolves could and should recover, including

the Northeast, Pacific Northwest and California, Southern Rocky Mountains, and Great Plains.

28. Recovery efforts, such as wolf reintroduction to the Northern Rocky Mountains, have been largely restricted to regions covered by the recovery plans.

29. The recovery plan for the "eastern timber wolf" set a goal of 1,250-1,400 wolves for the Minnesota population, with a population outside Minnesota of at least 200 wolves. The unambitious goals of this outdated plan were apparently met in the 1990s.

30. FWS has made numerous premature efforts to reduce federal protections for wolves under the ESA. The only successful effort was in the Northern Rocky Mountains, where Congress (through a rider to an appropriations bill) directed FWS to remove wolf protections. 76 Fed. Reg. 25,590 (May 5, 2011). FWS thereafter removed protections from Wyoming's wolves. 77 Fed. Reg. 55,530 (Sept. 10, 2012).

31. On February 29, 2012, FWS released a five-year status review recommending that the gray wolf listing be revised to reflect the current distribution and status of wolf populations in the Lower 48. FWS has not issued a five-year status review since February 29, 2012. However, in both 2013 and 2019, FWS proposed the removal of gray wolf protections throughout the contiguous United States. On November 3, 2020, FWS issued a final rule "removing the gray wolf entities in the lower 48" from the list of endangered and threatened wildlife. 85 Fed. Reg. 69,778 (Nov. 3, 2020).

32. On February 10, 2022, relying in part on the D.C. Circuit's ruling in *Humane Society*, a federal court vacated FWS's November 3, 2020, final rule. *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, 584 F. Supp. 3d 812 (N.D. Cal. 2022). As a result, gray wolves throughout the Lower 48, except for delisted wolves in the Northern Rocky

Mountain region and threatened wolves in Minnesota, are currently listed as an endangered species.

33. Today, gray wolves occupy less than 15 percent of their historical range in the U.S., with most recovery progress in areas covered by region-specific recovery plans. The total population likely numbers less than 7,000 individuals. While this represents an improvement in the status of the gray wolf since its listing, grave threats remain in both occupied and unoccupied portions of its range, including in those portions that have never been the focus of any recovery efforts.

34. Because recovery efforts have focused on just three regions and not on the nationwide listed entity – i.e., gray wolves throughout the Lower 48 – full recovery of the wolf, including in areas where the wolf could again thrive, has not been accomplished, and will not be accomplished in the absence of a comprehensive recovery plan.

35. Plaintiffs sent the Secretary and the Director of the U.S. Fish and Wildlife Service a 60-day notice of intent to sue for violations of the ESA on August 23, 2022.

## CLAIMS FOR RELIEF

36. For each of the Claims in this Complaint, the Center incorporates by reference each allegation set forth in this Complaint as if set out in full below.

## FIRST CLAIM

**Failure to Develop and Implement a Nationwide Gray Wolf Recovery Plan**

37. Section 4(f) of the ESA provides that FWS "shall develop and implement" recovery plans for the "conservation and survival" of listed species unless the agency makes a finding that "such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1).

38. The gray wolf's listing broadly covers the Lower 48 except for delisted wolves in the Northern Rocky Mountain region and separately listed Mexican gray wolves and red wolves. Yet FWS has never developed or implemented a recovery plan for the gray wolf that parallels the wolf's listing status, i.e., a nationwide plan that seeks to recover listed gray wolves throughout suitable habitat in the contiguous United States. Rather, the only recovery plan relevant to the currently listed entity covers just the "eastern timber wolf" and focuses on Minnesota. Nor has FWS ever published a finding that a nationwide recovery plan would not promote the conservation of the wolf on a nationwide basis.

39. FWS has thus violated its mandatory, non-discretionary duty found in Section 4(f) of the ESA, 16 U.S.C. § 1533(f), to develop and implement a nationwide recovery plan for the gray wolf.

40. This failure is actionable under the ESA citizen suit provision, 16 U.S.C. § 1540(g)(1)(C), and also constitutes agency action unlawfully withheld or unreasonably delayed in contravention of the APA, 5 U.S.C. § 706(1).

## SECOND CLAIM

### Failure to Conduct a Timely Five-Year Status Review

41. Section 4(c) of the ESA requires that FWS "conduct, at least once every five years, a review of all [listed] species . . . ." 16 U.S.C. § 1533(c)(2).

42. On February 29, 2012, FWS released a five-year status review for the gray wolf. FWS has not completed a five-year status review for the gray wolf since this time.

43. FWS has thus violated its mandatory, non-discretionary duty found in Section 4(c) of the ESA, 16 U.S.C. § 1533(c)(2)(A), to complete a timely five-year status review for the gray wolf.

44. This violation of law is actionable under the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(1)(C), and also constitutes agency action that is unlawfully withheld or unreasonably delayed in contravention of the APA, 5 U.S.C. § 706(1).

## PRAYER FOR RELIEF

WHEREFORE, the Center respectfully requests this Court:

1. Declare that FWS has violated its mandatory, non-discretionary duty found in Section 4(f) of the ESA, 16 U.S.C. § 1533(f), to develop and implement a nationwide recovery plan for the gray wolf;

2. Declare that FWS has violated its mandatory, non-discretionary duty found in Section 4(c) of the ESA, 16 U.S.C. § 1533(c)(2)(A), to complete a timely five-year status review for the gray wolf;

3. Order that FWS develop a nationwide recovery plan for the gray wolf according to a schedule prescribed by the Court;

4. Order that FWS complete a five-year status review for the gray wolf according to a schedule prescribed by the Court;

5. Award the Center its attorneys' fees and costs in this action; and

6. Grant the Center such other and further relief as this Court may deem just and proper.

DATED: November 29, 2022			Respectfully submitted,

*/s/ Eric Robert Glitzenstein*
Eric Robert Glitzenstein (D.C. Bar No. 358287)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
Telephone: (202) 849-8401
eglitzenstein@biologicaldiversity.org

Collette L. Adkins (MN Bar No. 035059X)*
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 595
Circle Pines, MN 55014-0595
Telephone: (651) 955-3821
cadkins@biologicaldiversity.org

Sophia Ressler (WA Bar No. 48406)*
CENTER FOR BIOLOGICAL DIVERSITY
2400 NW 80th St, #146
Seattle, WA 98117
Telephone: (206) 399-4004
sressler@biologicaldiveresity.org

*Seeking admission *pro hac vice*

*Attorneys for Plaintiff*

14