UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CENTER FOR BIOLOGICAL DIVERSITY,

*Plaintiff*,

v.

DEB HAALAND, *et al.*,

*Defendants*.

No. 22-cv-3588 (DLF)

---

## MEMORANDUM OPINION

Plaintiff the Center for Biological Diversity (CBD) brings this action under the Endangered Species Act (ESA), challenging certain purported inaction by the U.S. Fish and Wildlife Service (FWS) with respect to the preservation of gray wolves in the United States. *See generally* Compl., Dkt. 1. Before the Court is the defendants' motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss, Dkt. 14. For the reasons that follow, the Court will grant the motion in part and deny it in part.

### I.   BACKGROUND

####    A.   Statutory and Regulatory Background

#####       *1.   Endangered Species Act*

The ESA requires publication "in the Federal Register a list of all species determined [by FWS] to be endangered species and a list of all species determined [by FWS] to be threatened species."[1]  16 U.S.C. § 1533(c)(1).  A "species" can be broad or narrow; it can "include[] any

---

[1] "The U.S. Fish and Wildlife Service (FWS) and the National Marine Fisheries Service (NMFS) share responsibilities for administering the [ESA]" under authority delegated to them by the Secretary of the Interior and the Secretary of Commerce.  50 C.F.R. § 402.01(b).  Here, FWS is the relevant administrative agency.

subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). A species should be designated endangered if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). And it should be designated threatened if it "is likely to become an endangered species"—i.e., be in danger of extinction—"within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20). To reach a status determination, FWS considers five factors: "(A) the present or threatened destruction modification, or curtailment of [the species'] habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; [and] (E) other natural or manmade factors affecting [the species'] continued existence." *Id.* § 1533(a)(1). In evaluating those factors, the agency must act "solely on the basis of the best scientific and commercial data available to [it] after conducting a review of the status of the species and after taking into account those efforts" by any government "to protect such species." *Id.* § 1533(b)(1)(A); *see Defs. of Wildlife v. Zinke*, 849 F.3d 1077, 1079 (D.C. Cir. 2017).

For each species listed as endangered or threatened, the ESA imposes certain obligations on the agency. Relevant here, § 4(f)(1) provides that FWS "shall develop and implement [recovery] plans . . . for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless [it] finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1). In "each plan," the agency must "incorporate" "a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;" "objective, measurable criteria . . . [for when] the species" should be no longer be classified as endangered or threatened; and "estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal."

*Id.* § 1533(f)(1)(B).  Additionally, the ESA requires FWS to "conduct, at least once every five years, a review of all species included" in the endangered or threatened species list, *id.* § 1533(c)(2)(A), so that the agency can "determine on the basis of such review whether any such species should" be removed, or have its status changed, *id.* § 1533(c)(2)(B).  That determination must be made under the same standards as those used for original listing decisions.  *See id.*; *id.* § 1533(a)–(b).

        2.     *Gray Wolf Listings and Recovery Plans*

The Court recounts only a small portion of the lengthy regulatory and litigation history surrounding the listing status of gray wolves, *see* Mot. at 4–8, Dkt. 14; Opp'n at 4–8, Dkt. 17.

Originally, four different subspecies of gray wolves were separately listed as endangered species under the ESA and its predecessor statutes beginning in the 1960s.  *See* 32 Fed. Reg. 4001 (Mar. 11, 1967) (Timber Wolf, *Canis lupus lycaon*); 38 Fed. Reg. 14678 (June 4, 1973) (Northern Rocky Mountain Wolf, *Canis lupus irremotus*); 41 Fed. Reg. 17736, 17740 (Apr. 28, 1976) (Mexican Wolf, *Canis lupus baileyi*); 41 Fed. Reg. 24062, 24066 (June 14, 1976) (Texas Wolf, *Canis lupus monstrabilis*).  FWS abandoned that approach in 1978, relisting two "species" of gray wolves as (1) gray wolves in Minnesota, listed as threatened; and (2) gray wolves in the lower 48 states and Mexico, excluding Minnesota, listed as endangered.  43 Fed. Reg. 9607, 9612 (Mar. 9, 1978).  Despite the 1978 restructuring, however, starting the same year, FWS proceeded to develop separate recovery plans for various subsets of gray wolves roughly in parallel to their old listing statuses: the Eastern Timber Wolf (issued in 1978 and revised in 1992, *see* Def.'s Ex. 2, Dkt. 14-

3

2); the Northern Rocky Mountain Wolf (issued in 1978 and revised in 1987, *see* Def.'s Ex. 1, Dkt. 14-1); and the Mexican wolf (issued in 1982 and revised in 2017 and 2022[2]). *See* Compl. ¶ 26.

As relevant here, since 1978, two main changes have been made to the gray wolf's listing status. First, FWS has removed protections for gray wolves located in the Northern Rocky Mountains region.[3] Second, FWS resumed separately listing the Mexican Wolf, *Canis lupus baileyi*, as a separate species under the ESA. *See* Compl. ¶ 26; 80 Fed. Reg. 2488 (Jan. 16, 2015). As such, the two listed gray wolf species, excluding the separately listed Mexican wolf, are now (1) gray wolves in Minnesota (threatened); and (2) gray wolves elsewhere in the lower 48 states and Mexico, excluding the Northern Rocky Mountains and also excluding a separately defined experimental population area for the Mexican wolf subspecies (endangered). *See* 85 Fed. Reg. 69778, 69780 (Nov. 3, 2020) (hereinafter "Delisting Rule") (summarizing). That latter listing comprises all gray wolves other than Mexican wolves in all or part of 44 states and Mexico (hereinafter "44-State Listing").

In November 2020, FWS promulgated a final rule delisting both of these two gray wolf species, though not the Mexican Wolf. *See id.* at 69778. In February 2022, the U.S. District Court of the Northern District of California vacated that rule. *Defs. of Wildlife v. FWS*, 584 F. Supp. 3d 812 (N.D. Cal. 2022). The defendants concede that, because of the vacatur, for all relevant

---

[2] *See also* U.S. Fish & Wildlife Serv., *Mexican Wolf Recovery Plan, Second Revision* (Sept. 2022), https://ecos.fws.gov/docs/recovery_plan/Final%20Mexican%20Wolf%20Recovery%20Plan%20 Second%20Revision%202022%20signed_508%20compliant_1.pdf.

[3] First, FWS removed protections for gray wolves located in this region but protected a distinct population segment of the Northern Rocky Mountain Gray Wolf in Wyoming. 74 Fed. Reg. 15123 (Apr. 2, 2009); *see* 76 Fed. Reg. 25590 (May 5, 2011) (reinstating the rule pursuant to the 2011 Department of Defense and Full-Year Continuing Appropriations Act, Pub. L. No. 112-10, § 1713, 125 Stat. 38, 150, over pre-legislation vacatur). Then, FWS removed protection for that distinct population segment in Wyoming as well. 77 Fed. Reg. 55530 (Sept. 10, 2012).

purposes the 44-State Listing and the gray wolf in Minnesota both remain on the endangered or threatened species list. *See* Mot. at 8.

### B.   Plaintiff's Claims

The plaintiff now brings two claims under the ESA's citizen suit provision,[4] 16 U.S.C. § 1540(g)(1)(C), related to gray wolves. First, it alleges that FWS violated, and continues to violate, § 4(f) of the ESA because it "has never developed or implemented a recovery plan" for the 44-State Listing. Compl. ¶ 38. Second, it claims that FWS is in violation of § 4(c) of the ESA, which requires a review of all species' listing status at least once every five years, because the analysis in the 2020 delisting rule allegedly did not qualify as such a review. *See* Compl. ¶¶ 41–44; Opp'n at 26–35.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference

---

[4] Although the defendants never raise the issue of standing, the Court has independently satisfied itself at this stage that, based on the descriptions of several members of the plaintiff organization who have recreational and other interests in observing gray wolves and frequently do so, the plaintiffs have standing. *See* Compl. ¶¶ 6–18.

Additionally, both claims in the complaint also invoke the Administrative Procedure Act, but CBD never responds in its opposition to the defendants' argument that no relief is available under the APA because the ESA provides an adequate remedy. *See* Mot. at 20, 24–25. CBD also appears to concede that the Court "can issue appropriate injunctive relief under [the ESA citizen suit] provision," so "the Court need not address [its] alternative claim under the APA." Opp'n at 25 n.11. As such, the Court considers any APA claim abandoned and evaluates each count solely under the ESA's citizen suit provision.

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (cleaned up). Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (cleaned up). Those factual allegations, however, receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Id.* Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider

documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the court determines that it lacks jurisdiction, the court must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

## III.   ANALYSIS

The defendants argue that the Court lacks subject-matter jurisdiction because CBD has not stated a claim under a provision that waives the government's sovereign immunity. *See* Mot. at 11 & n.6. As such, the Court considers the defendants' motions under both Rule 12(b)(1) and Rule 12(b)(6) together.[5]

### A.   Recovery Plan

The ESA's citizen suit provision allows for suits "where there is alleged a failure . . . to perform any act or duty under [16 U.S.C. § 1533] which is not discretionary." 16 U.S.C. § 1540(g)(1)(C). The defendants concede that "Section 4(f) imposes" a "nondiscretionary duty" "to develop and implement a recovery plan for the conservation and survival of each listed species unless [FWS] finds that such a plan will not promote the conservation of the species." Mot. at 12 (cleaned up); *see also id.* at 3 ("ESA Section 4(f) directs the [agency] to develop and implement a 'recovery plan' 'for the conservation and survival' of each listed species . . . ." (quoting 16 U.S.C. § 1533(f)(1))). That concession disposes of the defendants' motion as to Count One.

All parties agree that under current law, after the vacatur entered by the Northern District of California, the 44-State Listing is on the endangered species list and triggers all relevant obligations under the ESA. Even so, FWS has never developed a recovery plan for the 44-State

---

[5] As explained above, the Court is not limited to the four corners of the complaint when determining a jurisdictional issue. But in any event, in considering dismissal under both 12(b)(1) and 12(b)(6), the Court relies only on the complaint, documents incorporated by reference, and records of which the Court can take judicial notice.

Listing of gray wolves. FWS has only ever created recovery plans for different subspecies of gray wolves—namely, the abandoned listed species of Eastern Timber Wolf and Northern Rocky Mountain Wolf, and the now separately listed Mexican Wolf. As alleged, the three subspecies recovery plans that FWS has issued do not, "to the maximum extent practicable," incorporate § 4(f)'s required elements of conservation, removal criteria, and cost estimates for the species at issue in this case—the *44-State Listing* of gray wolves. Indeed, they are not recovery plans for the 44-State Listing at all. They thus straightforwardly do not satisfy § 4(f)'s mandatory duty.

None of the defendants' various arguments to the contrary is persuasive. First, FWS did not satisfy § 4(f) by creating three separate recovery plans for subspecies of the gray wolf that are not the 44-State Listing. Section 4(f) states that FWS "shall develop and implement [recovery] plans . . . for the conservation and survival of endangered species and threatened species listed pursuant to" the ESA. 16 U.S.C. § 1533(f)(1). Standing alone, that might suggest that FWS is under a general statutory directive to create various recovery plans each designed to protect a single species, multiple species, or part of a species on the endangered or threatened species list—rather than to create a recovery plan for *each and every* species on the list. But any such license is limited by the remainder of § 4's language. In "each plan," the ESA demands, FWS must provide "a description of such . . . actions as may be necessary to achieve the plan's goal for the conservation and survival *of the species*," as well as "objective, measurable criteria" for when "*the species*" can be removed from the list. *Id.* § 1533(f)(1)(B) (emphases added). FWS may forgo creating a plan if it "finds that such *a plan* will not promote the conservation of *the species*." *Id.* (emphases added).[6] And "species" refers to a species "listed pursuant to" the ESA, that is, a "subspecies" or

---

[6] The defendants do not suggest that there has been any finding that "a [recovery] plan will not promote the conservation of" the 44-State Listing of gray wolves. 16 U.S.C. § 1533(f)(1).

8

"distinct population segment of any species" designated as threatened or endangered. *Id.* § 1532(16). Thus, "the text of Section 4(f) is clear: All endangered species must have a recovery plan that incorporates the enumerated measures set forth in Section 4(f)(1)." *Ctr. for Biological Diversity v. Bernhardt* (*Houston Toads*),[7] 480 F. Supp. 3d 69, 75 (D.D.C. 2020); *cf. Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585, 601 (D.C. Cir. 2017) (holding that the ESA's provision directing review of a "species included in a list" for reevaluation requires "'a review of the status of *the species*' as listed" and "not just a segment of it" (quoting 16 U.S.C. § 1533(c)(2)(A), (b)(1)(A))). Section 4(f)'s requirement is unambiguous: One listed species, one recovery plan. *See Friends of Blackwater v. Salazar*, 691 F.3d 428, 436–37 (D.C. Cir. 2012) ("[T]he [ESA] imposes mandatory obligations upon the [agency]. The [agency] shall, for example, develop a recovery plan for an endangered species, which plan shall include objective, measurable criteria." (cleaned up)).[8]

---

[7] The Court distinguishes two cases—*Center for Biological Diversity v. Bernhardt* (*Houston Toads*), 480 F. Supp. 3d 69 (D.D.C. 2020), and *Center for Biological Diversity v. Bernhardt* (*Grizzly Bears*), 509 F. Supp. 3d 1256 (D. Mont. 2020)—bearing the same caption, both repeatedly cited by the parties, by the species at issue.

[8] In a footnote, the defendants state that "[o]ne court has concluded that [FWS's] decision to create multiple recovery plans for wolves instead of a single, comprehensive national recovery plan is entitled to *Chevron* deference." Mot. at 17 n.7 (citing *Nat'l Wildlife Fed'n v. Norton*, 386 F. Supp. 2d 553, 567 (D. Vt. 2005)). As a threshold matter, the defendants have not properly raised this argument because a court "need not consider cursory arguments made only in a footnote." *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999). Moreover, the defendants never argue that such an interpretation of the ESA would be reasonable, nor do they state that it is *their* interpretation of the statute, let alone ask the Court to defer to it.

Regardless, any such argument would be unpersuasive. The statutory language is clear and unambiguous: Each endangered species requires a single recovery plan meeting § 4(f)'s elements. The *National Wildlife Federation* Court did not make clear its reasons for its holding. But to the extent it deferred to the agency simply because "courts should be particularly reluctant to second-guess agency choices involving scientific disputes that are in the agency's province of expertise," *Nat'l Wildlife Fed'n*, 386 F. Supp. 2d at 568 (cleaned up), such reasoning is unpersuasive. A court does not defer to an agency's scientific expertise when determining the content of its legal obligations under a statutory provision. And to the extent the court instead relied on the statute's purported "broad discretion to allocate scarce resources to those species [that] would most likely benefit from development of a recovery plan," *id.* at 567 (citation omitted), the defendants have

9

The recovery plans for the Eastern Timber Wolf, Northern Rocky Mountain Wolf, and Mexican Wolf do not satisfy § 4(f)'s requirements for the 44-State Listing "to the maximum extent practicable"; in fact, they do not purport to satisfy those statutory requirements for the 44-State Listing at all. For one thing, the Mexican Wolf and Northern Rocky Mountain Wolf are each either wholly or substantially excluded from the 44-State Listing altogether: The Mexican Wolf is listed separately, and gray wolves located in the Northern Rocky Mountains are excluded from the 44-State Listing. For another, none of the plans, including the one for the Eastern Timber Wolf, addresses, or even purports to address, conservation and survival of the 44-State Listing of gray wolves, criteria for that listing's removal from the endangered species list, or estimates of the time and expenses necessary to achieve the plan's goals. *See* 16 U.S.C. § 1533(f)(1)(B). To the contrary, the existing plans expressly set out to recover long-abandoned "species" designations that do not appear on the current endangered species list:

  

Eastern Timber Wolf Recovery Plan at 1; Northern Rocky Mountain Recovery Plan at 1; Mexican Wolf Recovery Plan at 1, *see supra* note 2.

---

conceded that § 4(f)'s duty to create a compliant recovery plan for each species is mandatory. Mot. at 12.

It is not the case that CBD or the Court is imposing "its own view of a better way to" achieve conservation "than the methods chosen by the FWS." Mot. at 15 (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 108 (D.D.C. 1995)). Neither the complaint nor this opinion suggests that, if this suit proves successful, FWS must choose particular means for achieving conservation of the 44-State Listing of gray wolves. Rather, this opinion holds only that CBD's complaint plausibly alleges that the agency has simply failed to issue a 44-State Listing gray wolf recovery plan at all, *i.e.*, that it failed to produce a plan with "the required plan components." *Id.* (quoting *Ctr. for Biological Diversity v. Bernhardt* (*Grizzly Bears*), 509 F. Supp. 3d 1256, 1268–69 (D. Mont. 2020)). None of the plans the agency has produced "incorporate[s]" "a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the *species*" of the 44-State Listing of gray wolves; none sets "objective, measurable criteria which, when met, would result in a determination . . . that [*that*] species be removed from the list"; and none includes "estimates of the time required and the cost to carry out those measures needed to achieve [a] goal" for the 44-State Listing. 16 U.S.C. § 1533(f)(1)(B) (emphasis added). To the contrary, "[t]he primary objective of the Recovery Plan for the Eastern Timber Wolf is to maintain and reestablish viable populations of the eastern timber wolf in as much of its former range as is feasible." Eastern Timber Wolf Recovery Plan at 24. The Northern Rocky Mountain Wolf recovery plan posits that "[t]he Northern Rocky Mountain wolf will be considered eligible for delisting when a total of 30 breeding pairs of wolves are established in three recovery areas for a minimum of 3 successive years." Northern Rocky Mountain Wolf Recovery Plan at 22. And the Mexican Wolf recovery plan estimates "Cost, Time, and Priority for Recovery Actions for the Mexican Wolf." Mexican Wolf Recovery Plan at 36 tbl. 1. In sum, the first two plans set goals, delisting criteria, and cost estimates for nonlisted species

and the third plan for a separately listed species. These plans do not meet, separately or together, § 4(f)'s required elements for the 44-State Listing of gray wolves.

Notwithstanding the defendants' arguments to the contrary, *see* Mot. at 16–17; Reply at 6–7, Dkt. 18, that fact makes *Grizzly Bears* distinguishable. In *Grizzly Bears*, the plaintiff challenged FWS's failure to update the grizzly bear recovery plan to encompass a broader geographic area "as the science on grizzly survival has changed." 509 F. Supp. 3d at 1268. But there, FWS concededly *had* established "a single recovery plan for the grizzly bear" listed species, *Ursus arctos horribilis*. Reply at 6. The plaintiff thus could not challenge the agency's discretionary choices about how to achieve species conservation in the face of scientific developments, even if the agency's plan of choice did not include a "broader geographic recovery analysis." *Grizzly Bears*, 509 F. Supp. 3d at 1269. Applied here, the logic of *Grizzly Bears* would preclude a challenge to the substance of a 44-State Listing gray wolf recovery plan, which might focus on certain subpopulations or geographic areas to the exclusion of others, *accord* Reply at 13 ("[A] plan that parallels the wolf's listing status is not equivalent to a nationwide plan that seeks to recovery listed gray wolves throughout suitable habitat in the continuous United States." (cleaned up)); *see id.* 9–14. But creating a recovery plan for the 44-State Listing that focuses more on certain regional populations within that listing than on others is not what the agency has done here—publish multiple different plans for subpopulations of the 44-State Listing, none of which evaluates the relevant factors as applied to the listing as a whole.

Second, the defendants' attempted reframing of the nature of the plaintiff's challenge—as a request that the Court "read a duty to *revise* an *existing* recovery plan into the ESA," Mot. at 17 (emphases added)—misses the mark. The *Houston Toads* court easily dispensed with this argument. There, CBD challenged FWS's failure to include the required § 4(f) elements in its

12

recovery plan for the Houston toad. 480 F. Supp. 3d at 71–73. FWS responded that the 1988 amendments to the ESA, which postdated the existing 1984 Houston toad recovery plan and created new required elements under § 4(f), "d[id] not apply 'retroactively' to pre-1988 recovery plans." *Id.* at 76. Judge McFadden rejected this argument as "a red herring" because "the relevant question" was not whether the existing recovery plans could lead to liability under the new amendments, but rather "whether the text of § 4(f) exempt[ed] [species with] pre-1988 Recovery Plans" from the section's general mandatory duty. *Id.* at 76–77. Answering that question in the negative, Judge McFadden concluded that CBD had stated a claim by plausibly alleging that FWS had never created a recovery plan compliant with § 4(f). *Id.* at 77. So too here: Section 4(f) imposes an obligation on FWS to *create* a recovery plan for the 44-State Listing, an obligation it has never met.

Of course, to the extent it remains justifiable under other provisions of the ESA, FWS could again separately designate the Eastern Timber Wolf and Northern Rocky Mountain Wolf as endangered and produce recovery plans for each alongside that of the Mexican Wolf. *See* Reply at 14 (suggesting that recovery plans in parallel to the current listings "would not make sense from a biological perspective"). But FWS has used its statutory authority—over several previous legal objections, *see Humane Soc'y*, 865 F.3d at 595–600—to, after grouping subspecies together, identify distinct population segments within species, delist those segments, and reconstitute a new listed species out of the remainder. From that choice flows a concomitant obligation: FWS must create a recovery plan for *the species it has listed*, the 44-State Listing of gray wolves. For purposes of the ESA's recovery plan mandate, "this wolf comes as a wolf"[9]—not two, or three, or four.

---

[9] *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

Finally, the Court rejects the defendants' argument, made for the first time in reply, that they have discretion not to create a new recovery plan for the 44-State Listing because "Section 4(f) directs the Service to 'give priority [in creating recovery plans] to those endangered species or threatened species . . . that are most likely to benefit from such plans.'" Reply at 9 (quoting 16 U.S.C. § 1533(f)(1)(A)); *see also id.* at 4 (citing authority, though not directly asserting, that the statutory phrase "to the maximum extent practicable" renders the obligation to satisfy § 4(f)'s elements discretionary). Even if the Court were to consider this argument—which it need not[10]—it would prove too much. The defendants concede that the ESA imposes a mandatory duty to create a recovery plan for each listed species. Given that concession, there is nothing in the statutory language to suggest that a different rule applies based on whether a newly listed species replaced a previously listed, distinct, antecedent species. And § 4(f) in its current form imposes a continuing, present obligation on FWS to create compliant recovery plans, even if other recovery plans were previously developed under a different legal regime or for different previously listed species. *See Houston Toads*, 480 F. Supp. 3d at 76–77.[11]

Because the complaint plausibly alleges a violation of a nondiscretionary duty to create a single recovery plan for the 44-State Listing gray wolf species, the defendants' motion to dismiss Count One of the complaint will be denied.

---

[10] *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008); *Oakes v. Thurgood Marshall Acad. Pub. Charter High Sch.*, No. 20-cv-2754, 2022 WL 1556382, at *5 (D.D.C. May 17, 2022).

[11] It is similarly irrelevant that a recovery plan is a nonbinding "statement of intention, not a contract." *Friends of Blackwater*, 691 F.3d at 434. CBD does not challenge a failure to abide by a 44-State Listing recovery plan, but rather the plan's nonexistence.

**B.     Five-Year Review**

In Count Two, CBD claims that FWS failed to meet its statutory obligation to "conduct, at least once every five years, a review" of the status of listed gray wolf species to "determine on the basis of such review" whether the status of the gray wolf should be changed. 16 U.S.C. § 1533(c)(2). Because the agency conducted such a review, that claim will be dismissed.

In its final rule delisting gray wolf species, FWS evaluated in detail the recovery status of the gray wolf. FWS specifically conducted a "Determination of Status Throughout All of Its Range" and "Determination of Status Throughout a Significant Portion of Its Range" for the "44-State Entity" of gray wolves and for gray wolves in Minnesota. Delisting Rule, 85 Fed. Reg. at 69880–86. That review occurred in 2020—i.e., within the last five years. "[T]he only mandatory aspect of the status review provision is that one must take place every five years." *Am. Forest Res. Council v. Hall*, 533 F. Supp. 2d 84, 93 (D.D.C. 2008) (citation omitted). Thus, based on the complaint and the public record, there is no alleged violation of a mandatory duty by the agency and so no waiver of sovereign immunity allowing the Court to exercise jurisdiction over this claim. 16 U.S.C. § 1540(g)(1)(C).

CBD's counterarguments do not hold water. First, the Northern District of California's vacatur of FWS's delisting, *see* Opp'n at 26–29, does not change the fact that FWS actually conducted its five-year review as required by statute. The remedy of vacatur under the Administrative Procedure Act "restore[s] the prior regulatory status quo; the invalid rule [is] eliminated and replaced by any preexisting rule it had superseded." *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 415–16 (D.D.C. 2020). Accordingly, when the Northern District of California vacated the agency's final delisting rule, it undid the final *legal consequences* of the rule—that is, the agency's delisting of the 44-State Listing and Minnesota wolves. The court's ruling did not, however, erase

15

the fact that the agency conducted a review and reached a post-review determination before issuing its rule delisting gray wolves. *See Am. Forest Res. Council*, 533 F. Supp. 2d at 93 (explaining that the five-year review and recommendation do not constitute final agency action); 5 U.S.C. § 704 (limiting review to "final agency action"). That is no less true simply because FWS published its determinations alongside its delisting decision, rather than in a "standalone document"—a form of publication that CBD concedes would render the five-year review valid notwithstanding vacatur of the delisting rule, Opp'n at 28. The case on which CBD relies, *Sierra Club v. Johnson*, 374 F. Supp. 2d 30 (D.D.C. 2005), is distinguishable. There, the court held that the EPA never satisfied its duty to enter a final approval or disapproval of a plan because an earlier such approval was vacated. *Id.* at 32–33. But such vacatur meant that the agency's "conditional approval" was undone; the EPA's "prior attempt[] to carry out [its] duty" to approve or disapprove "ha[d] been vacated by the Court of Appeals." *Id.* at 33. Here, in contrast, the Northern District of California vacated the agency action that FWS promulgated as a result of the five-year review. The court did not hold that the agency failed to "conduct" a review under the provisions of 16 U.S.C. § 1533(c)(2) and so order one to be undertaken, *see Wyoming v. U.S. Dep't of Interior*, 360 F Supp. 2d 1214, 1233 (D. Wyo. 2005)—which would in any event entail a distinct remedy altogether from vacatur of final agency action.

Second, it is irrelevant that the agency conducted its review in consideration of its decision to delist remaining gray wolf species other than the Mexican Wolf. It is of course true that a five-year review does not itself lead to a change in listing status, or even require the agency to make such a change. *See Humane Soc'y*, 865 F.3d at 596; Opp'n at 29–31 (citing various other authority for this proposition). But it does not follow that FWS *cannot* conduct its review as part of a process that results in a final rule changing a species' status. *See Wyoming*, 360 F. Supp. 2d at 1233.

Indeed, the factors to be considered in reaching determinations after a five-year review are the same as those considered in any listing decision. *See* 16 U.S.C. § 1533(c)(2)(B). FWS also did not violate its own regulations and guidance documents in conducting a review in this manner. It is true that regulations require that "[a] notice announcing those species under active review . . . be published in the Federal Register," 50 C.F.R. § 424.21, but the agency published such a notice in its notice of proposed rulemaking as to the delisting. 84 Fed. Reg. 9648 (Mar. 15, 2019). Contrary to CBD's assertions, such uses of a final rulemaking and notice of proposed rulemaking are not ex post rationalizations—even assuming that this would make FWS's satisfaction of its obligations invalid—because they are explicitly contemplated by the agency's guidance documents. *See 5-Year Review Guidance* (July 2006), at 1-2, Defs.' Reply Ex. 2, Dkt. 18-2 ("All status reviews that are conducted on a listed species may fulfill the requirements of a 5-year review."); *id.* at 2-3 ("If a status review is conducted on a species . . . for any . . . reason . . . the *Federal Register* notice that announces that review will satisfy the requirement under 50 CFR 424.21."). Accordingly, this claim will be dismissed.

## CONCLUSION

For the foregoing reasons, the Court denies the defendants' motion to dismiss as to Count One and grants the motion as to Count Two. A separate order consistent with this decision accompanies this memorandum opinion.

---
DABNEY L. FRIEDRICH
United States District Judge

August 11, 2023