IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>*Plaintiff*,<br><br>v.<br><br>DEB HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior, *et al.*,<br><br>*Defendants*. | Case No. 1:22-cv-03588-DLF |

**STIPULATED SETTLEMENT AGREEMENT**

This Stipulated Settlement Agreement ("Agreement") is entered into by and between Plaintiff Center for Biological Diversity ("Plaintiff" or "Center") and Defendants Deb Haaland, in her official capacity as Secretary of the U.S. Department of the Interior; the U.S. Fish and Wildlife Service ("Service"); and Martha Williams, in her official capacity as Director of the U.S. Fish and Wildlife Service (collectively, "Defendants"); who, by and through their undersigned counsel, state as follows:

WHEREAS, the Service listed gray wolves as various subspecies between 1967 and 1976, 32 Fed. Reg. 4001 (Mar. 11, 1967) (listing the timber wolf, *Canis lupus lycaon*), 38 Fed. Reg. 14678 (June 4, 1973) (listing the Northern Rocky Mountain wolf, *Canis lupus irremotus*), 41 Fed. Reg. 17736 (Apr. 28, 1976) (listing the Mexican wolf, *Canis lupus baileyi*), 41 Fed. Reg. 24062 (June 14, 1976) (listing the gray wolf subspecies *Canis lupus monstrabilis*);

WHEREAS, in 1978, the Service consolidated these subspecies listings and classified gray wolves in Minnesota as a threatened species and gray wolves elsewhere in the lower 48 States and Mexico as an endangered species, 43 Fed. Reg. 9607 (Mar. 9, 1978);

1

WHEREAS, Section 4(f) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(f), requires the Service to develop and implement plans for the conservation and survival of endangered and threatened species unless the Service finds that such a plan will not promote the conservation of the species;

WHEREAS, the Service issued a Northern Rocky Mountain Wolf Recovery Plan in 1978 and revised it in 1987;

WHEREAS, the Service issued a Recovery Plan for the Eastern Timber Wolf in 1978 and revised it in 1992;

WHEREAS, the Service issued a Mexican Wolf Recovery Plan in 1982 and revised it in 2017 and 2022;

WHEREAS, the Service separately listed the Mexican wolf subspecies in 2015;

WHEREAS, apart from the Mexican wolf subspecies, gray wolves are currently listed as threatened in Minnesota and endangered in the rest of the lower 48 States outside the delisted Northern Rocky Mountains distinct population segment and the experimental population area for the Mexican wolf subspecies ("listed gray wolves");

WHEREAS, on August 23, 2022, Plaintiff sent Defendants a letter stating its intent to file suit to compel the Service to develop and implement a "national recovery plan for the gray wolf" pursuant to Section 4(f) of the ESA, and to compel the Service to complete a five-year status review pursuant to Section 4(c)(2) of the ESA, 16 U.S.C. § 1533(c)(2);

WHEREAS, on November 29, 2022, Plaintiff filed its complaint in this case, alleging in Count One that the Service failed to develop and implement a "nationwide recovery plan for the gray wolf" pursuant to Section 4(f) of the ESA, and in Count Two that the Service failed to complete a five-year status review pursuant to Section 4(c)(2) of the ESA;

WHEREAS, on February 24, 2023, Defendants filed a motion to dismiss Plaintiff's Complaint;

WHEREAS, on August 11, 2023, the Court denied Defendants' motion as to Count One and granted the motion as to Count Two;

WHEREAS, Plaintiff and Defendants (collectively, "the parties"), by and through their authorized representatives, and without any admission or final adjudication of the issues of fact or law with respect to Count One of Plaintiff's Complaint, have negotiated a settlement that they consider to be in the public interest and a just, fair, adequate, and equitable resolution of the dispute set forth in Count One of Plaintiff's Complaint;

NOW, THEREFORE, the parties hereby stipulate and agree as follows:

1.  Within two years of the Court's order entering this Agreement, the Service agrees to develop and post on its website a draft recovery plan for listed gray wolves, unless the Service finds that such a plan will not promote the conservation of the species and posts the finding on its website. Within one year of posting a draft recovery plan for listed gray wolves, the Service agrees to post on its website a final recovery plan for listed gray wolves.

2.  The order entering this Agreement may be modified by the Court upon good cause shown, consistent with the Federal Rules of Civil Procedure, by written stipulation between the parties filed with and approved by the Court, or upon written motion filed by one of the parties and granted by the Court. In the event that either party seeks to modify the terms of this Agreement, including the deadlines set forth in Paragraph 1, or in the event of a dispute arising out of or relating to this Agreement, or in the event that either party believes that the other party has failed to comply with any term or condition of this Agreement, the party seeking the modification, raising the dispute, or seeking enforcement shall provide the other party with

notice of the claim or modification. The parties agree that they will meet and confer (either telephonically or in person) at the earliest possible time in a good-faith effort to resolve the claim before seeking relief from the Court. If the parties are unable to resolve the claim themselves, either party may seek relief from the Court.

3. In the event that Defendants fail to meet a deadline set forth in Paragraph 1 and have not sought to modify it, Plaintiff's first remedy shall be a motion to enforce the terms of this Agreement, after following the dispute resolution procedures described above. This Agreement shall not, in the first instance, be enforceable through a proceeding for contempt of court.

4. This Agreement requires only that the Service take the actions specified in Paragraph 1. No provision of this Agreement shall be interpreted as, or constitute, a commitment or requirement that Defendants take action in contravention of the ESA, the Administrative Procedure Act ("APA"), or any other law or regulation, either substantive or procedural. Nothing in this Agreement shall be construed to limit or modify the discretion accorded to the Service by the ESA, the APA, or general principles of administrative law with respect to the procedures to be followed in making any determination required herein, or as to the substance of any determination made pursuant to Paragraph 1.

5. Plaintiff reserves its right to challenge any final recovery plan or any finding that a recovery plan will not promote the conservation of the species issued pursuant to Paragraph 1. To challenge any final determination issued pursuant to Paragraph 1, Plaintiff must file a separate action. Defendants reserve the right to raise any applicable claims or defenses to such challenges.

6. Without waiving any defenses or making any admissions, Defendants agree to pay Plaintiff $72,500.00 in attorneys' fees and costs. Plaintiff agrees to accept the $72,500.00 from Defendants in full satisfaction of any and all claims, demands, rights, and causes of action for any and all attorneys' fees and costs Plaintiff reasonably incurred in connection with the above-captioned litigation through the signing of this Agreement.

7. Plaintiff agrees to furnish Defendants with the information necessary to effectuate the payment set forth in Paragraph 6. Payment will be made to Plaintiff by electronic funds transfer. Defendants agree to submit all necessary paperwork for the processing of the attorneys' fees award to the Department of the Treasury's Judgment Fund Office within fifteen (15) days from receipt of the necessary information from the Center or from approval of this Agreement by the Court, whichever is later.

8. By this Agreement, Defendants do not waive any right to contest fees and costs claimed by Plaintiff or Plaintiff's counsel in any future litigation or continuation of the present action.

9. No part of this Agreement shall have precedential value in any litigation or in representations before any court or forum or in any public setting. No party shall use this Agreement or the terms herein as evidence of what does or does not constitute a reasonable timeline for recovery planning for any species.

10. Nothing in this Agreement shall be construed or offered as evidence in any proceeding as an admission or concession of any wrongdoing, liability, or any issue of fact or law concerning the claims settled under this Agreement or any similar claims brought in the future by any other party. Except as expressly provided in this Agreement, the parties do not waive or relinquish any legal rights, claims, or defenses they may have. This Agreement is

executed for the purpose of settling Count One of Plaintiff's Complaint, and nothing herein shall be construed as precedent having preclusive effect in any other context.

11.    Nothing in this Agreement shall be interpreted as, or shall constitute, a requirement that Defendants are obligated to pay any funds exceeding those available, or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable appropriations law.

12.    The parties agree that this Agreement was negotiated in good faith and it constitutes a settlement of claims disputed by the parties. By entering into this Agreement, the parties do not waive any legal rights, claims, or defenses, except as expressly stated herein. This Agreement contains all of the terms of agreement between the parties concerning Plaintiff's Complaint, and is intended to be the final and sole agreement between the parties with respect thereto. The parties agree that any prior or contemporaneous representations or understanding not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect.

13.    The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to agree to the terms and conditions of this Agreement and do hereby agree to the terms herein. Further, each party, by and through its undersigned representative, represents and warrants that it has the legal power and authority to enter into this Agreement and bind itself to the terms and conditions contained in this Agreement.

14.    The terms of this Agreement shall become effective upon entry of an order by the Court ratifying the Agreement.

15. Upon adoption of this Agreement by the Court, Count One of Plaintiff's Complaint shall be dismissed with prejudice. Notwithstanding the dismissal of this action, however, the parties hereby stipulate and respectfully request that the Court retain jurisdiction to oversee compliance with the terms of this Agreement and to resolve any motions to modify such terms. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

Dated: December 13, 2023

Respectfully submitted,

TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
S. JAY GOVINDAN, Section Chief
MEREDITH L. FLAX, Deputy Section Chief

*/s/ Astrid Stuth Cevallos*
ASTRID STUTH CEVALLOS, Trial Attorney (MD Bar)
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel:    (202) 305-5751
Fax:   (202) 305-0275
Email:  Astrid.Cevallos@usdoj.gov

*Attorneys for Federal Defendants*

*/s/ Collette L. Adkins*
Collette L. Adkins (MN Bar No. 035059X)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 595
Circle Pines, MN 55014-0595
Tel: (651) 955-3821
Email: cadkins@biologicaldiversity.org

Eric Robert Glitzenstein (D.C. Bar No. 358287)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: (202) 849-8401
Email: eglitzenstein@biologicaldiversity.org

*Attorneys for Plaintiff*